UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JESSE SCHULTZ,

       Plaintiff,

v.                     **MEMORANDUM OF LAW & ORDER**
                     Civil File No. 13-558 (MJD/JSM)

DOREL JUVENILE GROUP, INC.,

       Defendant.

Laura L. Pittner and Stuart L. Goldenberg, Goldenberg, PLLC, Counsel for Plaintiff.

Mark A. Solheim, Anthony J. Novak, Larson King, LLP, and Jonathan Judge, Davin Reust, Matthew Schiltz, Schiff Hardin, LLP, Counsel for Defendant.

## I.    INTRODUCTION

This matter is before the Court on Defendant Dorel Juvenile Group, Inc.'s Motion for Summary Judgment [Docket No. 22], which the parties have requested be decided on the papers [Docket No. 37]. The Court concludes that there is a genuine dispute of material fact as to whether the parties agreed to settle all claims prior to the commencement of this action. Accordingly, the Court denies Defendant's Motion for Summary Judgment.

## II.   BACKGROUND

### A.   Factual Background

In early June 2011, Plaintiff Jesse Schultz was injured while inflating the tires of a hand truck he had purchased from Costco. (Goldenberg Aff., Ex. A, Schultz Demand Letter – Sept. 4, 2012, at 1.) The hand truck had been manufactured by Defendant Dorel Juvenile Group, Inc. (Schultz Demand Letter – Sept. 4, 2012, at 1.) Plaintiff alleges that, while he was inflating the tire, the rim design of the tire exploded and caused severe injury to Plaintiff's hand, nearly amputating his left ring finger. (Schultz Demand Letter – Sept. 4, 2012, at 1.) The incident also resulted in a severed tendon and chipped bone in Plaintiff's finger. (Solheim Aff., Ex. B, Rossi Letter.)

Shortly after the incident, Plaintiff visited the local Costco store, and as he was waiting in the checkout line, a Costco employee asked Plaintiff what had happened to his finger. (Goldenberg Aff., Ex. C, Schultz Dep. 18:20-23.) Plaintiff responded that he had been injured with a product from the Costco store. (Schultz Dep. 19:9-12.) Plaintiff was then asked by the employee to meet with her supervisor. (Schultz Dep. 21:16-18.) On July 26, 2011, after speaking with Plaintiff, the supervisor sent a letter to Defendant. (Rossi Letter; see also Goldenberg Aff., Ex. D, Brooks Dep. 20:23-25.)

After receiving the letter from Costco, Marilyn Brooks, a product specialist and claims adjuster for Defendant, left a voice message for Plaintiff sometime in early August. (Brooks Dep. 11:17-23, 20:18-21:3, 24:6-12.) Brooks had been employed in Defendant's consumer relations department for ten years, and she is experienced in handling liability claims. (Brooks Dep. 11:17-23, 12:16-25, 17:6-13.) Plaintiff returned Brooks' call on August 23, 2011. (Brooks Dep. 25:20-22; Schultz Dep. 27:20-28:1.) Plaintiff and Brooks discussed the hand truck incident and Plaintiff's injury during this initial call. (Brooks Dep. 26:3-8.)

Brooks then informed Plaintiff that he would have to send supporting documentation of his injury and purchase of the hand truck in order to be reimbursed for his out-of-pocket costs. (Schultz Dep. 27:20-28:1, 39:1-5; Brooks Dep. 28:11-16.) Plaintiff claims that there was no mention of releasing Defendant from any and all future liability claims during this call. (See Brooks Dep. 28:9-21 ("During the initial conversation I took the report. He told me what had happened with his hand and that he had to go back to work. I explained to him what he needed to submit to us in order to file a claim for compensation with Dorel.").) After this call, Plaintiff sent Defendant his medical bills, medical records, and the hand truck itself. (Schultz Dep. 30:22-25.)

3

At Brooks' instruction, Plaintiff also sent Defendant a letter detailing his injuries and requesting $2,921.77 from Defendant. (Brooks Dep. 90:20-91:6; Schultz Dep. 34:18-19, 38:15-25; Solheim Aff., Ex. C, Schultz Demand Letter – Undated, at 2.) In his letter, Plaintiff states that "I also have other expenses of shipping, bandages, ect. [sic], But am only looking for the total of $2,921.77." (Schultz Demand Letter – Undated, at 2.) After receiving the letter, Brooks called Plaintiff on November 10, 2011 ("November 10 Conversation"). (Brooks Dep. 47:6-21.)

The parties provide different characterizations of what was said during the November 10 Conversation. Defendant alleges that Brooks accepted what Defendant characterizes as Plaintiff's offer to settle the claim. (See Brooks Dep. 47:6-21 ("[H]e said that the total amount that he was asking for [was] $2,921.77. So I called him to let him know that we had agreed to pay his claim for that amount.").) Plaintiff, however, maintains that, at no point from August 4, 2011 to the November 10 Conversation did Defendant or Plaintiff agree that reimbursement for Plaintiff's out-of-pocket expenses would be a settlement of all claims against Defendant. (Brooks Dep. 35:2-37:13; 89:12-20.)

Defendant alleges that, during the November 10 Conversation, Plaintiff and Brooks agreed that Plaintiff would sign a release of liability (the "Release") as to Defendant, and in exchange he would receive his requested reimbursement. (Brooks Dep. 92:18-93:7; Schultz Dep. 41:14-17.)  However, Plaintiff disputes that Brooks mentioned the Release at all during the November 10 Conversation.  (See Goldenberg Aff., Ex. B, Schultz Aff. ¶¶ 9-10.)  Both parties agree that the Release was not discussed in detail during the November 10 Conversation.  (Brooks Dep. 70:22-71: 14, 77:12-20 ("No, I didn't go through all of this step by step, one by one with him.").)

Brooks immediately sent Plaintiff a letter referring to Plaintiff's claim and enclosing the Release.  (Solheim Aff., Ex. E, Letter & Release.)  The letter provided that "[i]t is important [the reader] read[s] and understand[s] this document fully before signing it."  (Letter & Release, at SCHULTZ000002.)  It also stated that the Release was a "legally binding contract" and needed to be "signed in the presence of a Notary Public or [Plaintiff's] claim cannot be processed."  (Letter & Release, at SCHULTZ000002.)  The Release itself, entitled "Confidential Release of All Claims" was a three-page, single-spaced document. (Letter & Release, at SCHULTZ000003 – SCHULTZ000005.)   It included clauses

regarding Plaintiff's right to consult with an attorney before executing the Release, the requirement that Plaintiff hold harmless and defend Defendant from any and all claims by a third party, and the suggestion that Plaintiff read the Release completely before signing it. (Letter & Release §§ III, VI; Letter & Release, at SCHULTZ000005.) In his deposition, Plaintiff later acknowledged that, at the time he received the Release, he understood that he had agreed to settle for $2,922.00. (Schultz Dep. 42:2-6.)

After some time, Brooks called Plaintiff, who indicated that he had misplaced the Release. (Brooks Dep. 97:18-98:4.) During the call, Plaintiff requested an additional copy of the Release to sign and return. (Brooks Dep. 97:18-98:4.) After requesting the additional copy of the Release, however, Plaintiff spoke to his health and benefit coordinator, who advised Plaintiff not to sign the Release. (Schultz Dep. 44:1-11.) Plaintiff refused to sign the Release. (Schultz Dep. 44:24-45:5.)

To date, Plaintiff has incurred approximately $26,000 in medical bills as a result of the hand truck incident. (Schultz Aff. ¶ 1.) Much of his medical expenses have been paid by Plaintiff's health carrier, Minnesota Laborers Health and Welfare Fund; however, his health carrier is expected to demand

6

reimbursement for its payment from any compensation Plaintiff receives from Defendant. (Schultz Aff. ¶ 12.)

### B. Procedural History

On March 11, 2013, Plaintiff filed a lawsuit in the United States District Court for the District of Minnesota against Defendant Dorel Juvenile Group, Inc. The Complaint alleges Count One: Negligence; Count Two: Strict Liability; Count Three: Express Warranties; Count Four: Implied Warranties; Count Five: Misrepresentation; and Count Six: Post-Duty Failure to Warn. Defendant now moves for summary judgment on all claims.

## III. DISCUSSION

Defendant's motion for summary judgment is based on the argument that, before the commencement of this lawsuit, Plaintiff orally agreed to settle all claims with Defendant. The Court concludes that there is a genuine dispute as to whether Defendant and Plaintiff reached an oral settlement agreement that would preclude the current lawsuit. Accordingly, the Court denies Defendant's motion for summary judgment.

### A. Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material

fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." Amini v. City of Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).

To defeat summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828 (8th Cir. 2013).

**B.    Choice of Law**

Defendant in the present case is an Indiana corporation. Therefore, there may be a conflict of which law to apply regarding the alleged settlement agreement. However, no true conflict exists between Minnesota and Indiana law regarding the disputed issues. See Milwaukee Mut. Ins. Co. v. Deere & Co., No. 04-4905, 2005 WL 2105513, at *2 (D. Minn. Aug. 25, 2005) ("In Minnesota, before conducting a choice-of-law evaluation, a court must first determine whether a

true conflict exists between the two forums. . . . [I]f choosing one state's law over the other is not outcome-determinative, no further conflict-of-law analysis is needed.") (citations omitted). When the substantive law is substantially the same in two states, a court should rely upon the law of the forum state. Davis by Davis v. Outboard Marine Corp., 415 N.W.2d 719, 723 (Minn. Ct. App. 1987) ("Where there is no true conflict, the law of the forum, in this case Minnesota, is applied."). Here, Indiana, like Minnesota, views settlement agreements under well-established contract law and enforces oral settlement agreements. See Zimmerman v. McColley, 826 N.E.2d 71, 77 (Ind. Ct. App. 2005). Therefore, because the law is substantially the same, the Court concludes that Minnesota law applies in this case.

**C.  Standard for Enforcement of Settlement Agreements in Minnesota**

Oral settlements are enforceable under well-established Minnesota law. See, e.g., Sabri v. Sabri, No. C4-99-1844, 2000 WL 1051970, at *2 (Minn. Ct. App. Aug. 1, 2000) (citing Jallen v. Agre, 119 N.W.2d 739, 742-43 (Minn. 1963)) ("A settlement agreement need not be in writing and will be enforced when the facts show that the required contractual elements have been met."). Furthermore, settlement agreements are greatly favored in Minnesota. See Johnson v. Sitzmann, 413 N.W.2d 541, 545 (Minn. Ct. App. 1987) ("[S]ettlement of disputes

without litigation is highly favored; such agreements will not be lightly set aside by courts."). The party opposing enforcement of a settlement therefore bears the burden of defeating the settlement agreement. Ryan v. Ryan, 193 N.W.2d 295, 297 (1971).

Settlement agreements are contracts; thus, for a valid settlement agreement to exist, there must be offer, acceptance, and a meeting of the minds on the settlement's essential terms. TNT Props., Ltd. v. Tri-Star Developers LLC, 677 N.W.2d 94, 100-01 (Minn. Ct. App. 2004). The existence of a contract is usually a question of fact for the trier of fact; however, if the facts are undisputed, then existence of a contract becomes a question of law. Id. at 101. The objective theory of interpretation is applied when assessing the existence of a contract. Id. at 102. Accordingly, in examining whether offer and acceptance have occurred, courts ignore subjective intent and assess only "outward manifestation[s] of assent" to the settlement. Id. Additionally, "an agreement should be upheld where, despite some incompleteness and imperfection of expression, the court can reasonably find the parties' intent by applying the words as the parties must have understood them." Triple B & G, Inc. v. City of Fairmont, 494 N.W.2d 49, 53 (Minn. Ct. App. 1992).

### D.   Plaintiff's Affidavit

As an initial matter, Defendant has raised the issue of whether the Court should even consider an affidavit submitted by Plaintiff in response to Defendant's motion for summary judgment.  The Court concludes that Plaintiff's affidavit is appropriate for consideration; accordingly, the Court will consider the affidavit in analyzing the motion for summary judgment.

Plaintiff filed an affidavit along with its Memorandum in Opposition to Defendant's Motion for Summary Judgment.  (Goldenberg Aff., Docket No. 27, Ex. B, Schultz Aff.)  This affidavit details Plaintiff's November 10, 2011 phone conversation with Brooks.  (See id.)  Specifically, the affidavit provides that nothing was said during the phone conversation about a release of liability, and that Brooks merely requested that Plaintiff send a list of his out of pocket expenses for reimbursement.  (Id. ¶ 5.)  Furthermore, the affidavit explains that Plaintiff never agreed, orally or in writing, "to release Defendant from any and all claims in exchange for about $2,922.00."  (Id. ¶ 9.)  The affidavit also emphasizes that Plaintiff was an unsophisticated, unrepresented negotiator during the alleged formation of the settlement.  (Id. ¶¶ 3-4.)

Defendant argues that Plaintiff's affidavit is a "sham" and requests that the Court disregard the affidavit.  Defendant raises City of St. Joseph, Mo. v. Sw. Bell

11

Tel., 439 F.3d 468, 475 (8th Cir. 2006), which held that a court should disregard and strike affidavits that attempt to fabricate issues of fact on summary judgment. City of St. Joseph provides that "an affidavit filed by the plaintiff in opposition to a motion for summary judgment that directly contradict[s] the plaintiff's previous deposition testimony [is] insufficient to create a genuine issue of material fact." Id.

Notably, however, City of St. Joseph also provides that courts should not strike affidavits that state that the affiant "was confused in his deposition," that "explain portions of [the] deposition testimony that were unclear," or that "do[] not actually contradict his earlier testimony." Id. at 476. After a thorough review of the record, the Court concludes that there is an indication that Plaintiff was confused during the deposition and that Plaintiff's affidavit does not actually contradict the deposition or the demand letter.

The relevant portion of Plaintiff's affidavit reads: "I did not at any point verbally or in writing agree or intend to agree to release Defendant from any and all claims in exchange for about $2,922.00 . . . . nor did I ever believe I had agreed to a full and final settlement." Defendant asserts that this portion directly contradicts his demand letter, which provides: "I also have other expenses of

shipping, bandages, ect. [sic], But am only looking for the total of $2,921.77." (Solheim Aff., Docket No. 25, Ex. C, Schultz Demand Letter – Undated, at 2.) Defendant argues that this quote indicates that Plaintiff contemplated his other expenses yet made the choice to settle claims for only $2,921.77, suggesting that Plaintiff knew he was offering a final settlement. Defendant also argues that Plaintiff's affidavit directly contradicts his deposition testimony, which repeatedly indicates that Plaintiff agreed to a release of all claims "without limitation." Because of these purported contradictions, Defendant requests that the Court strike Plaintiff's affidavit.

    The Court finds Defendant's arguments unpersuasive. While it is true that Plaintiff's letter contemplates the $20,000.00 in medical bills that Plaintiff had accumulated at that time, it also acknowledges that future medical bills would be forthcoming. The letter could be reasonably interpreted as a statement that Plaintiff was "only looking for the total of $2,921.77" <u>at that time</u>. Additionally, the letter does not otherwise state anything about agreeing to settlement of claims; it can be read as a mere request for reimbursement. The demand letter does not indicate that Plaintiff knew this was the final settlement. It does not state any kind of exchange between Plaintiff and Defendant. Rather, it merely

Plaintiff's request for reimbursement, which he may have thought he was entitled to without having to provide any consideration.

Furthermore, the deposition transcript only indicates that Plaintiff understood that he was settling for out-of-pocket expenses and that he was confused regarding the phrase "without limitation":

> Q:   And you represented that that was the amount of money ($2,022) that you were willing to accept for this claim for compensation, correct?
>
> A:   Of my out-of-pocket expense.
>
> Q:   You didn't in any way limit your demand for settlement as to out-of-pocket expenses; did you?
>
> A:   That's what her (Defendant's adjuster) and I had been calling it I guess.

(Schultz Dep. 38:22-39:5.)

Defendant makes much of the fact that Plaintiff acknowledged, during the deposition, that he agreed to settlement "without limitation."  This acknowledgement is insufficient to support the conclusion that Plaintiff's affidavit contradicts the deposition because, when considering other portions of the deposition, one may reasonably conclude that Plaintiff was likely confused about the phrase "without limitation."  "Without limitation" is a legal term of art that Defendant never defined for Plaintiff during the deposition.  See Bourgo v.

14

<u>Canby Sch. Dist.</u>, 167 F. Supp. 2d 1173, 1182 (D. Or. 2001) (holding that deposition testimony about legal conclusions a deponent is not qualified to give or testimony in response to a question a deponent does not understand will not preclude a deponent from arguing contrary to that testimony). Therefore, it is uncertain whether Plaintiff even understood the meaning of the phrase "without limitation," during the deposition.

For these reasons, the Court is not persuaded that Plaintiff's affidavit contradicts his deposition testimony. Accordingly, the Court considers Plaintiff's affidavit in deciding this motion.

### E. Whether the Settlement Agreement Is Valid

The Court concludes that there is a genuine dispute as to whether the parties reached an oral settlement agreement prior to the commencement of this action. Summary judgment is therefore denied.

Defendant has not shown that any settlement agreement with Plaintiff was ever formed. Defendant argues that the settlement was made the moment Plaintiff agreed to sign the Release. Defendant offers the case of <u>Johnson v. Sitzmann</u>, 413 N.W.2d 541, 544 (Minn. Ct. App. 1987) (upholding an oral settlement agreement between the parties when the plaintiff refused to sign a written version of the agreement). Defendant asserts that the same situation

happened here because Plaintiff agreed that an oral agreement was made, and this is shown by his deposition testimony. (See Schultz Dep. 44:2-5 ("Q: You and Ms. Brooks negotiated a settlement without limitation; correct? A: Yes.").) Defendant specifically emphasizes the following passage, arguing that it demonstrates that Plaintiff understood he'd entered a full and final settlement, "without limitation":

> Q: And because there were no limitations on the demand that you were presenting, you indicated in writing on Exhibit Number 1 that your demand to settle this claim was the sum of $2,921.77; correct?
>
> A: Correct.
>
> Q: All right. And just to close this loop so we can move on to another subject, you didn't indicate in writing or verbally to Ms. Brooks at any time that your demand was limited to only a partial claim; correct?
>
> A: Correct.

(Schultz Dep. 40:19-41:5.)

Despite Defendant's arguments, the Court is not convinced that there was ever a meeting of the minds to create a settlement between the parties here. While Johnson offers support for Defendant's argument that oral settlement agreements are enforceable, it does not address a central issue in this matter: that Plaintiff disputes whether he even orally agreed to settlement in the first place.

The record presents a genuine issue of fact as to what was said and represented during the phone calls between Plaintiff and Brooks.

This dispute of fact goes to the heart of the matter.  Defendant asserts that Plaintiff objectively manifested his assent to be bound by the settlement agreement three times: (1) when Plaintiff drafted his demand letter; (2) when Plaintiff had a phone conversation with Brooks on November 10, 2011; and (3) when Plaintiff requested a second copy of the Release.  (Schultz Dep. 41:14-17; Brooks Dep. 93:20-94:11; see Brooks Dep. 98:18-20 ("Q: In your mind did you have an agreement with Mr. Schultz?  A: Absolutely.").)  Plaintiff, however, maintains that nothing in the evidence shows that Plaintiff agreed to sign the Release during the November 10, 2011 phone conversation with Brooks; that the depositions cited by Defendant in its brief do not show that Plaintiff understood that a release was being sent or the contents of that release; and that the depositions do not even provide the contents of the phone conversation.  (See Schultz Dep. 41:14-17; Brooks Dep. 93:20-94:11.)  With respect to his request for a second copy of the Release, Plaintiff argues that this fact only demonstrates that he wanted to review the Release to make a more informed decision, not that he assented to be bound by the Release.

Defendant's evidence does not provide clear indication of the communications that formed the bargain.  According to Defendant, the exchange (money for a release of all claims) was detailed during the phone conversation between Plaintiff and Brooks.  The only evidence regarding this conversation exists in deposition testimony that shows that Plaintiff knew he was agreeing to "settlement without limitation," which, as discussed above, may be disregarded considering Plaintiff's potential confusion about the phrase.  (See Schultz Dep. 38:22-5; 39:1-5, 40:14-18; 43:2-7.)

Furthermore, the existence and validity of a settlement has weak support considering Plaintiff was unrepresented by counsel and there is nothing to suggest there Plaintiff was an unsophisticated party in the negotiation.  See Ryan v. Ryan, 193 N.W.2d 295, 298 (Minn. 1971) ("The trial court's strong statement supporting the integrity of the agreement is confirmed not only by the fact that plaintiff had the benefit of competent counsel throughout the proceedings but also by the further circumstance that she is a well-educated woman, knowledgeable in the field of investments, and had had considerable business experience.").

Based on the foregoing reasons, the Court concludes that there is a genuine dispute of material fact with respect to whether there was ever a meeting of the minds on the essential terms of the settlement—specifically, what was to be given up in exchange for the reimbursement of Plaintiff's out-of-pocket expenses. A reasonable jury could conclude that a person in Brooks' position should not have interpreted Plaintiff's communications as agreeing to a settlement of all claims.

Without an oral settlement, the basis for Defendant's motion fails; no written settlement exists, and no implied agreement arises because Plaintiff did not accept any money from Defendant in exchange for settlement. Accordingly, the Court denies summary judgment in this matter.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Dorel Juvenile Group, Inc.'s Motion for Summary Judgment [Docket No. 22] is **DENIED**.


Dated:  March 24, 2014         s/ Michael J. Davis
                               Michael J. Davis
                               Chief Judge
                               United States District Court